Your Honor, I just want to use a few minutes on my argument and reserve my time for responding because part of this combined appeal is we are responding to MTI's cross-appeal on Let me ask you a couple of housekeeping questions, several, actually. Am I correct that the only substantively new issues raised in this appeal are those disputed as to Claims 30 and 31 of the 810? As to which? I'm sorry, Your Honor. Claim 30? 30 and 31, yeah. Yes, Your Honor. Okay. Do you agree that your argument regarding a lack of motivation to combine the two prior references is identical to the motivation to combine arguments you made in your appeal just now? Yes. Overall, it has some difference with applicability to the claims like single security code in particular. We think there was a real stretch to say Denison teaches using a single security code. That was unfounded. But in general, yes, the arguments against combining Rothbaum and Denison apply to all. And do you agree that Claim 20 is identical in both 762 and 800 patents? Yes, Your Honor. Okay. Thank you. Briefly, I only have a minute and a half left, but I briefly wanted to touch on the claim construction of single security code that we do think it requires that the programming station only generate one code for use at a time. The Board's definition effectively means the programming station could generate multiple codes for use at a time, which is how Denison is designed to be able to do, to generate multiple codes. The keys and the locks can use multiple codes. But in this, as far as our claim, we think it's properly limited to only one code at a time for use at a time. The Board seemed to think we were saying only that the programming station can only generate one code, period. No, it's one code for use at a time, and that is consistent with Figure 12 and also consistent with Figure 12B, which the Board cited the magic key. You are erasing the code from the programming station, putting in a new code, but still the programming station has one code in it for use at a time, and it's specifically set up that way. So we do think that is the proper construction. I'll save the rest of my time. Let me ask about Claim 31 while I'm waiting out there. So, if we were to conclude that the such-that reference in Claim 31 is just a reference to an intended result, then we'd have to reverse the Board on that claim, wouldn't we? So, oh, you're talking about Claim 31 on the appeal? Yeah. Yes, Your Honor, if you find that it is just an intended result, not a meaningful limitation, would you have to reverse the Board? Yes. Yes, I think at that point, Your Honor, it is, I mean, Claim 31 is essentially meaningless at that point because unlike many of the, I think all the cases MTI has cited on intended results, they are a discrete element in a much longer claim, such as in the In re Oma appraisal case, which I can go into more detail in my time after the appellate on this issue speaks. But our case is a single clause, the only clause in a dependent claim. It would render that claim meaningless. So yes, it would require a reverse, a warrant for a reverse. Okay. Mr. Norman. Thank you, Your Honor. With respect to Claim 31 of the 800 patent. The parties contest to what extent MTI properly raised certain issues before the PTAB's final decision implicating waiver on appeal. Where in the record below did MTI raise its, I'm quoting, the inability of the key program by a different programming station to arm a security device, close quote, that argument to the PTAB before the denial of rehearing? Well, in the motion for rehearing, we raised the issue. Because the issue was raised in the motion for rehearing, it was raised and considered by the board, and the board did not, and the board actually reviewed the issue. Now as far as claim construction with respect to Claim 31, petitioner did raise that issue in the petition. So it was your position in the petition that that claim element should have no weight, I guess, it's just an intended use limitation, or alternatively the prior teaches it? Did you actually present that construction? Well, not that precision. What we said is Claim 31 is directed to the uniqueness of the security code. We pointed out that in the specification, there is no differentiation between the unique requirements set forth in Claim 1, and any of the other different types of uniqueness required. In your petition for rehearing, you have several pages, though, directed to the argument that that clause should have no weight. Is that the first time you presented that argument with such clarity? This is, well, that was the first time that was raised because it wasn't raised by anybody else. In other words, our position was that there didn't need to be a precise definition given for, in order to consider the issues before the board, or in the petition, the board didn't actually need to define the meets and bounds of the term unique, but what it needed to conclude is that unique, all of the different uses of the term unique, in all of the claims is going to be sufficient. But just to be clear, the rehearing, on rehearing was the first time that you argued that the set of that limitation shouldn't be given patentable weight? That's the, I mean, as far as, yeah, that's going to be the first time we said that there's in reality not a distinction between the unique requirement of Claim 1 and that of Claim 31. But what we said is that, and what the board concluded in both the institution decision and acknowledged in the final written decision, on page A of the final written decision, the board actually acknowledged that unique, that a randomly generated code. You're springing from the issue that we're trying to discuss, which is the extent to which the so that argument as having no patentable weight was before the board. What did the board say about that on rehearing? I'm sorry? What did the board say about the argument that the so that limitation has no patentable weight on the rehearing? What did it say about it? Okay, so on rehearing, they didn't address that issue in the final written decision itself, right? Am I correct about that? Well, they didn't address the issue. The issue had not been raised before the final written decision. Okay, so it was raised on the rehearing, and what did they say about it at that point? What they said is that this limitation... Show us where they talked about it. I'm sorry? Show us, please, where they talked about it. Is it page 90? Page 90. I mean, what they said, I mean, what the board talked about is, on page 90, is that the language somehow imposes some type of a structural requirement, and that structural requirement is that it says, well, on page 89, we determined that this indicates a particular and distinct structural meaning for the recited single security code that distinguishes it from single security codes generally. So on the one hand, what they're saying is that this seems to be more unique, so this somehow means more unique, even though there's no differentiation in the patent for different levels of uniqueness. But what it also is saying that somehow there's such that limitation imposes a limitation on some type of a key or some type of a programming station, but Claim 31 imposes no limitations on the programming station of Claim 1, no limitation on the security device or the key of Claim 1. Why isn't it, it's a limitation on the security code, right? It's a limitation on the security code, and that's, and that's the point that I'm, I'm making. Right. Go ahead. You argue that a code is just a code. There's no such thing as a randomly generated code, and instead a key programmed by a different programming station will be capable of arming, disarming if it has the same code. Is, is that, I mean, that took me aback. If you have a different system with a different kind of key, and it has 1, 2, 3, 4, 5 in it, as did the, the key from the other system, it's going to work in that system? If you have, if you have a key that's going to be basically the same type of a programming station. So if you have two programming stations that are, that say, are described in the 800 patent, it is certainly possible. But the way I read what your argument is, something from an entirely different kind of system, which has the same code numbers, would work? Well, it seems to me unlikely it's going to have the same type of a code if, if it's going to have two keys. But if it's going to have, if it's going to have two codes, and those two codes are going to be transmitted wirelessly, then, then, yes, it's going to be receiving that code, unless there's going to be some other type of data in there that causes it to recognize. But if, if the only difference that we're talking about is the randomly generated code, so in other words, it has all the other components. But it's, it's going to have to be the same system no matter what. I mean, what, what the 800 patent is really talking about are, is certainly not talking about, hey, our concern is that someone's electronic car key is going to disarm the system. That's my question. That's my, I read your argument as saying that. Well, what, what we're saying is that if you have it, say, from the same manufacturer, you have, that's what our argument really is. If you have two keys from the, or two programming stations from the same manufacturer, and the codes are randomly generated, chances are the codes are going to be different. And so if you randomly generate codes with each one, chances are they'll be different, but there's also nothing in there with respect to random generation to, to ensure that they won't match. If, if you have two programming stations from the same manufacturer, and they're, the only difference is they both randomly generate, there is a chance if it's, it depends on the probability of the, you know, of the system, it's, the system's capability. But what the board, how the board construed Claim 31 and did so for the first time is saying that the key itself, or that the, it's something more than just the security code. Something more than just the uniqueness of the security code, and something more than the randomly generated unique security code. Rather, it's an incapability of a key, or an incapability of a programming station. But no additional programming, Claim 31 does not add another programming station, it does not add a second key, and it doesn't impose a limitation on the first programming station or the first key. One of the problems I'm having with your argument is that I don't see where you argued this in your petition. For example, looking at page A268 of the appendix, I'm looking at your petition that you originally filed in this case, and instead of saying that this claim limitation doesn't have weight, you say that the prior art teaches this claim limitation. And this is with respect to Belden, it's a different piece of prior art, but you specifically say that Belden teaches that the key will not function within other stores' alarm module since it will have been programmed with a different SDC. So you took the position that it had weight. How is the board supposed to know that you had a different position until you've made the argument? And I can cover that. Even if they somehow have different weight, that wasn't our argument. But what our position was is that because we didn't need to precisely determine what constitutes a unique security code, we said that according to the 800 patent, if a code is randomly generated, it is unique. And that uniqueness would cover any of the type of uniqueness described in the 800 patent because there's no differentiation. Where do you say that in your petition? We say that in our petition when looking at the definition of- Do you have an appendix site for that? We will find it, and I'll give that to you on rebuttal. And if I could reserve the rest of my time for rebuttal. Okay. Mr. Harvin. Your Honors, thank you. We submit that the board's decision was correct and should be affirmed. This was simply a matter of the petitioner failing to meet its burden as to the full scope of the claim. The board's decision that that effect was correct, it was certainly supported by substantial evidence. We also would submit the board improperly interpreted the claim, did not change the construction between the initial institution decision and the final written decision. Moreover, MTI had adequate notice of the issues, so even if the board had changed, MTI was aware of these issues. And claim 31 does not just state a meaningless intended result. We would also argue that some of these arguments are presented too late. We put them on notice. Well, first off, the board initially, institution decision said claim 31 adds additional requirements. We then said that in our patent owner response that the MTI did not point to anything in the combination ensuring the keys programmed by other stations would not work for claim 31. As Your Honors have pointed out, MTI treated claim 31 in its petition as having meaningful limits that needed to be addressed. So we submit that the intended result argument is new and shouldn't be considered as is the obvious, even in light of the board's construction argument and some other arguments. On the, this is not a case like SAS where there was a substantial change between a construction and the initial decision and the final written decision. This is more akin to the Western Gecko or Intellectual Ventures, two cases we've cited. The board's statement in SAS that, the court's statement, excuse me, in SAS that a board can render a construction in the final written decision undercuts MTI's argument that by definition there must be a construction to institute trial. We also litigated extensively the issue of uniqueness. We litigated the issue of arming to, arming and disarming under when MTI argued that a prior application in the chain, the Belden reference, was effectively prior art. We argued that it disclosed arming upon a matching. The board noted that we had, our argument, and the board noted in the institution decision that we could not argue against anticipation, or at least our position as to Belden argued against anticipation. So the board clearly said that, told MTI that you have to prove arming upon a matching to establish anticipation, including as to claim 31. Under the Genzyme Therapeutics case, the question for compliance with the APA in due process is did the parties have adequate notice of the issues that would be considered and decided, and we submit the answer here is clearly yes. In regard to the claim 31, whether it states just an intended result, again, we think that issue has been raised too late by MTI. We can't have, I mean, it's going to be. Suppose we conclude that the issue is properly before us. What's the answer to it? We think substantively MTI is incorrect. As I said before, number one, this is a sole limitation of a dependent claim that would be rendered meaningless if you say it's simply a such that or a whereby clause stating an intended effect. It's unlike the Elmo-Prazo case. In the Elmo-Prazo case, they rely on heavily. The court found the requirement at issue of enhanced stability of the drug that was subject to the patent at issue had been established by other elements in the claim. And in doing so, the court relied on the district court's determination as a fact finder, this is from the court's opinion, that those other elements of the claim established that required enhanced stability. So they were not reading that requirement out of the claim. They were just saying in this phrase, it doesn't add anything to what's already there. This case is more like Hoffer, in which a whereby clause and a method claim was found to constitute a meaningful limitation. The court held that construing it as just an intended result would be contrary to the fundamental invention. Well, doesn't the specification say that that result automatically flows? Sorry, Your Honor? Doesn't the specification itself say that that result automatically flows? Well, certain of the claims are not limited to or don't require other stations, but I think the patent does specify that it is intended that the key be so unique or the code be sufficiently unique that a programming key programmed from a different programming station would not work with the system programmed by the first programming station because it has a different code in it. Well, but I don't think that really answers my question. Doesn't, for example, if you look at JA 125, column 9, lines 55 to 64, it says since the APC and the programmable key 5 is unique to the particular programming station, the retail store, et cetera, et cetera, that key cannot be taken to another retail store having the same type of alarm. Doesn't that recognize that this is an automatic result of the system? I would submit, Your Honor, what that shows is there, and we agree this is a limitation on the code. We think there are different levels of uniqueness. Again, the first program, the first claim doesn't require or contemplate necessarily a second programming station, a second key. It's only dealing with the initial programming station. We think this claim does require something more. For JA 121, column 2, lines 18 to 27, this uniqueness prevents a key from being used as a different, at a different retail store than the one from which the code is, from which the key is stolen. I mean, there's just lots of references and specifications saying that this inability to use it in another store flows automatically, right? Can I ask you about Denison for a minute? Yes, Your Honor. Denison, that's the prior that would be asserted against this claim, right? Or Denison and Rothbaum, right? I'm sorry? Doesn't Denison teach that so long as you have a ability to turn the lock into a learn mode, any key could reprogram the lock? That's the prior reference that's being relied on. The open door, when you open the door with a mechanical key and then hit the learn switch, I believe that's correct. Then it will take the key that is present and will take that code. I think that is correct. I think that's correct. Okay. Anything further? I don't believe so. Let me just make sure, Your Honor. Just briefly, it was not raised on the principal argument. It is in the brief that MTI has argued that collateral estoppel already resolves this issue. We submit it as not. They're relying on claim 35 of the 247 patent. It's talking about the affirmative limitation of arming upon a matching. It does not deal with the incapability, certainly not the incapability of both arming and disarming. Moreover, the finding as to that claim was that it was obvious based on the combination of Rothbaum and Denison, and that is part of our appeal here today. So we submit until Your Honor's rule on this case there is not collateral estoppel based on that court decision. Thank you. Mr. Norman? Under the Chafin case that's cited in our briefs, the Federal Circuit can review the Board's decision because the Board decided the issue, even though the Board decided it in connection with the denial of the rehearing. The Board did not invoke waiver, and Enview has not argued that the Board abused its discretion in not finding waiver. Do you agree, though, that this argument was not made in the petition? Or do you have a cite for me in the petition where the argument was made? Well, the argument with respect to the intended result, no. That was not raised in the petition. I understood the petition to be saying that, in fact, the partner did teach the limitation, and even cited to Dr. Allison's testimony for support for that. Yes, yes. Well, the limitation with respect to it's going to accomplish this. Not that we argue that it is a limitation. In the petition, you asked for a cite earlier, and I said I would provide it. On appendix 245, that's in the petition, we raised claim construction as to claims 1 and 31. In particular, we're saying, we said that claims 1, 31, and 34 use the term unique, such that the security code has to be unique to the programming station or particular retail establishment. Where does this, on page 245, talk about the other part, the such that limitation in 31? I can see where this addresses the use of the word unique, but it doesn't seem to tie it at all to that. It doesn't talk about degrees of unique. So what I'm saying is the such that, however you look at it grammatically, such that is not adding additional limitations, I'm sorry, it's not adding additional elements or requirements of a programming station or key, but at most it's, at most if you just read the language, it's modifying the word. So you didn't raise the such that argument before we're hearing, but your argument is that the board considered the argument on the merits and rejected it, and that gives us the ability to treat it as non-related. That is correct. But as far as what we did assert with respect to the claim, we did, we were arguing that claim 31 is directed to the uniqueness of the code. And that was specified in, you know, at least, and maybe perhaps other places, but at appendix 245, that was in our petition. And as far as the such that as somehow requiring things different, I mean the institution decision actually agreed with the position that we made with respect to a randomly generated code is sufficient to encompass the unique requirements of claim 1 and 31. And it acknowledged so even in the final written decision, appendix page 8. And I see my time is up. Okay. Thank you very much. Thank you. And then our final.